## Richmond

TOWN OF VIENNA COUNCIL V. KARL E. KOHLER AND BETTY
KOHLER, HIS WIFE, WILLIAM E. DANIELS AND NORMA
DANIELS, HIS WIFE AND RALPH G. LOUK

April 21, 1978.

Record No. 761550.

Present: I'Anson, C.J., Carrico, Harrison, Cochran, Harman and Compton, JJ.

*John F. Gionfriddo* for appellant.

*Thomas O. Lawson (W. Brewster Cockrell; Kelly, Louk, Lawson & Kelly,* on brief) for appellees.

HARRISON, J., delivered the opinion of the Court.

Karl E. Kohler, William E. Daniels and Ralph G. Louk own a parcel of land in the Town of Vienna, containing approximately 12.17 acres, hereinafter referred to as the "Louk Tract". The land was formerly zoned RS-16, which permitted single-family detached residential 16,000 square foot lots. The owners divided the tract into three parcels and applied for a rezoning of parcels 1 and 3 to RTH category, which permits townhouse clusters, and

for a rezoning of parcel 2 to RS-10 category, which permits 10,000 square foot residential lots. The Town Council denied their application and rezoned the entire tract to RS-12.5 category, which permits single-family detached residential 12,500 square foot lots.

Appellees thereafter filed a motion for a declaratory judgment, and the court below decreed that the action of Council was "arbitrary, capricious and unreasonable" and bore "no substantial relationship to the public health, safety and the general welfare". The court remanded the matter to Council for further consideration, and for a zoning classification of the subject property, exclusive of parcel 2, to a zoning district of no less intensity than category RTH-10. Appellant declined to reconsider the property for rezoning, and the court below, on July 30, 1976, entered its final decree in which it permanently enjoined Council from interfering with the rights of the property owners "to use the subject property in such a manner as shall comply in all respects to an intensity of use of no less than the RTH (Townhouses) zoning district of the Town of Vienna Zoning Code". Council noted an appeal from this decree.

The Louk Tract is described as bounded on the north by Ayrhill Avenue; on the east by Kenyon Lane; on the south by Church Street; and on the west by Beulah Road. East Street runs through the Louk Tract in a general north-south direction from Ayrhill Avenue to Church Street. The northeast section of the Louk Tract is parcel 1, which contains approximately 2.3 acres and is a narrow strip of land lying between East Street and Kenyon Lane. The parcel is traversed by Wolf Trap Run. Parcel 2 is a 2.9 acre strip of land that extends along the north side of the Louk Tract and the south side of Ayrhill Avenue from Beulah Road to East Street. The residue of the Louk Tract is parcel 3, containing approximately 6.9 acres, lying immediately south of parcel 2, and located between Beulah Road and East Street, its southern boundary being Church Street.[1]

---

[1] Appellees filed with their application, and with their motion for declaratory judgment, a plat or sketch of the Louk Tract which showed a total acreage of 12.170, divided into three parcels: Number 1 — 2.345 acres; number 2 — 2.922 acres; and number 3 — 6.903 acres. After Council rezoned the entire 12.170 acres to category RS-12.5, appellees caused a metes and bounds description of parcels 2 and 3 to be prepared by Orlo C. Paciulli and Associates. The Paciulli descriptions had the effect of reducing the acreage of parcel 3 from 6.903 to 6.330 and of increasing the acreage of parcel 2 from 2.922 to 3.495. This was done to provide a buffer strip, approximately 50 feet wide, along the east side of Beulah Road, and to move the

The properties located to the north, east and west of the Louk Tract and across Beulah Road, Ayrhill Avenue and Kenyon Lane, are zoned single-family detached residential of no less density than RS-12.5. To the south of the Louk Tract, and across Church Street, is the Orlich Tract of land which has been zoned for RTH-townhouses and also for transitional parking serving commercial uses. One block to the south of Church Street and the Louk Tract is Maple Avenue, the Town's main street, which is zoned for various commercial uses. The Louk Tract slopes from Ayrhill Avenue to Church Street on a 15 to 20 degree angle and faces directly on the rear of the commercial properties that front on Maple Avenue.

After appellees had filed their application for rezoning, a number of "work sessions" were initiated by Town Council and held in order to arrive at some agreement between the various property owners affected, the Council and the Planning Commission. At these sessions appellees presented various proposals for the development of the land, including an offer to dedicate parcel 1 to the Town to be utilized as a park area, and to limit construction to no more than 48 townhouses on the remainder of the Louk Tract. The work sessions were discontinued when it became obvious that no plan which appellees could propose would be acceptable to the citizens owning property in the neighborhood.

The Vienna Planning Commission recommended to Council that parcel 1 not be rezoned; that the southern boundary line of parcel 2 be moved south approximately ten feet; that parcel 2 and a 50-foot buffer along Beulah Road be rezoned RS-12.5; and that the remaining portion of parcel 3 be rezoned RTH-cluster for a maximum of 57 townhouses. Council rejected this

southern boundary line of parcel 2 south a distance of approximately 10 feet. In its final decree of July 30, 1976, the trial court referred to the Paciulli metes and bounds description. During the course of the trial, counsel for appellees advised the court below that they were accepting the Council's zoning of parcel 2 to category RS-12.5. Appellees also removed parcel 1 from consideration, their counsel having advised the court, in an opening statement outlining the issues involved, that in view of appellees' willingness to convey parcel 1 for park purposes, appellees were not contending that parcel 1 should be rezoned into townhouses. Counsel for appellees then represented to the court that this had the effect of "narrowing the scope of the hearing down to this portion of the property in the middle". The Paciulli descriptions were prepared and filed subsequent to these representations by counsel. In this opinion we have assumed that the property which was referred to in the final decree of the trial judge, and which was the subject of its action, was the 6.330 acre parcel.

recommendation and on March 17, 1975, with the Mayor and another Councilman dissenting, took the action in controversy and rezoned all three parcels from RS-16 to RS-12.5.

The dispositive issues are as follows: (1) Did the trial court err in allegedly considering evidence which was not considered by the Town Council, *i.e.*, the property owners' attempt to contract with Council and with private citizens in order to achieve the requested zoning of their property? (2) Did the trial court err in substituting its discretion for the legislative discretion of the Council? (3) Did the trial court err in ruling that single-family detached residential zoning deprived the owners of the legitimate and most appropriate use of their property?

In its memorandum opinion the trial court noted the purposes of the RTH townhouse zoning category, as set forth in § 18-39 of the Town Code. The section provides that in addition to encouraging "the most appropriate use of land", the purpose of the category is "to provide for controlled development of closely spaced, high quality, single-family residential buildings with individual design characteristics and appearances; thereby permitting a higher density use of land, without departing substantially from the predominately single family residential character of the existing development in the Town. . . ."

The trial court observed that Vienna is a town predominately composed of single-family detached residences and that the possibility of future growth is restricted. It felt that this was one of the reasons why the Town had not seen fit to adopt a comprehensive land use plan. The court specifically found as facts that:

"1. Water, sewers, roads and schools are adequate for townhouses. This fact was established by stipulation.

"2. The Vienna Planning Commission recommended townhouses on the tract. The Town Manager had recommended townhouses on the tract.

"3. The townhouses proposed by the complainants [appellees], who would also be the architect and developer for the project, fully complied with the purposes of the RTH category.

"4. On the same evening that complainants' [appellees'] request for townhouses was denied, the property immediately across Church Street, known as the Orlich Tract, was rezoned from single family detached residential to townhouses.

"5. The Louk Tract with its fifteen to twenty degree slope and specimen trees more readily lends itself to townhouse development than to single family detached development. Single family detached would require extensive change and destruction to the topography.

"6. The tract is in close proximity to and fully views commercial property.

"7. The property diagonally across the street to the southeast consists of townhouses.

"8. Part of the property across Church Street is zoned transitional for parking.

"9. The value of the property developed as proposed by complainants [appellees] is approximately $450,000.00. This does not include any houses on Parcel 1. The loss in value of the land if developed only as single family detached is between $150,000.00 and $200,000.00.

"10. The complainants [appellees] made substantial concessions which the Town Council was aware of with respect to the number of townhouses, their size and their location on the tract, in order to meet citizens' and Council objection."

■ These factual findings by the trial court are supported by testimony and exhibits in the record. Having made these findings, and consistent with *Fairfax County* v. *Snell Corp.*, 214 Va. 655, 202 S.E.2d 889 (1974), and *Board of Supervisors* v. *Carper*, 200 Va. 653, 107 S.E.2d 390 (1959), the trial court found that appellees had successfully challenged the presumptive reasonableness of the action taken by the Town Council of Vienna in rezoning the Louk Tract RS-12.5, with probative evidence of unreasonableness. We need only consider whether Council failed to show some evidence of reasonableness sufficient to make the question fairly debatable. The trial judge held that it did so fail, and we agree.

■ Appellant objects to the action of the court in noting the proposals made by appellees to meet objections interposed to their application for rezoning. Appellant says that, in noting the proposals, the court considered evidence and matters that were not before Council. While the record abounds with testimony and exhibits showing that Council had full knowledge of the proposals made by appellees incident to their zoning application, the decision of the court below does not rest on or depend upon

the proposals. The rationale of the trial court's decision can be clearly found within its first nine enunciated findings of fact.

■ Appellant says further that, if it had acted upon the proposals made by appellees, it would have engaged illegally in "contract zoning" or "conditional zoning". Both appellant and appellees have discussed at great length the issue of the authority of the Town Council to engage in "contract zoning" and "conditional zoning". Although counsel for appellant is correct in his position that, at the time Council considered rezoning of the Louk Tract, it could not engage in contract zoning or conditional zoning, this issue became moot before the proceedings terminated below.

While this case was pending in the lower court the General Assembly of Virginia amended Code § 15.1-491 to permit the adoption "as a part of an amendment to the zoning map of reasonable conditions, in addition to the regulations provided for the zoning district by the ordinance, when such conditions shall have been proffered in writing, in advance of the public hearing before the governing body required by § 15.1-493 by the owner of the property which is the subject of the proposed zoning map amendment". This statutory amendment was in effect on July 12, 1976, when Council refused to reconsider the subject property for rezoning, as directed by the trial court. Council then had before it a letter from appellees proposing the conveyance of parcel 1 for public park purposes, the rezoning of parcel 2 to RS-12.5, the establishment of a 50-foot buffer strip along Beulah Road, and the rezoning of parcel 3 to RTH. No legal impediment then existed to prevent Council from considering the written proposal made by the property owners, a proposal which substantially accorded with the recommendation of its own Planning Commission and its own expert, Douglas R. Fahl. Yet, Council refused to consider the proposals or to reconsider the zoning.

■ The principal reason assigned by Council for its refusal to rezone parcel 3 to zone RTH was its determination that Church Street should be the zoning line between property zoned for single-family detached residential use and property zoned for townhouse clusters. It says this is necessary to prevent commercial and townhouse encroachment into the area north and west of the Louk Tract, thus preserving the essential character of the area. The trial court found no evidence to

support the Council's reasoning. It noted that three sides of the Louk Tract are already bounded by established and developed single-family neighborhoods; that parcel 2 had been zoned for single-family detached homes fronting on Ayrhill Avenue; and that on one side of the property is the Westwood Golf and Country Club which will not be affected by the zoning controversy. The trial court could find no "rational basis" why the transition or zoning line should stop at Church Street, as opposed to a natural boundary line on the tract itself which exists between parcels 2 and 3. *See Fairfax County* v. *Williams,* 216 Va. 49, 60, 216 S.E.2d 33, 41 (1975).

The evidence does not support Council's position on the location of the zoning line. Appellees have accepted RS-12.5 zoning category for parcel 2, thereby permitting lots of 12,500 square feet for single-family detached residential use, as proper for this property located along the south side of Ayrhill Avenue. Appellees further agree that a 50-foot buffer strip of land is desirable along the east side of Beulah Road. Therefore, if parcel 1 continues to be zoned RS-12.5, or ultimately is dedicated for park purposes, no persons presently owning single-family detached residences will have their property located directly across from any portion of the Louk land on which townhouse clusters can be constructed. The transition from single-family detached residential use to townhouse cluster will have been effected within the subdivision itself.

Rosser H. Payne, Jr., after being qualified as an expert in planning, testified that "street lines are not normally used as zoning lines unless there are some extenuating circumstances". He saw no objection to the zoning line being located along the south side of parcel 2 of the Louk Tract, as sought by the property owners, instead of Church Street, as decided by Council. Payne said that, because of the hilly topography of the Louk Tract, the better place for transition between townhouses and single-family units would be within the tract itself. He regarded townhouses as the best use of the property and said that their construction would have no adverse effect on the public health, safety and welfare.

Karl E. Kohler, an architect by profession, and one of the appellees, testified that while the Louk Tract could be developed for single-family detached residences, to do so would practically

denude the area, and that a townhouse development would result in more open space remaining after construction.

Orlo C. Paciulli, a registered engineer, testified that the Louk Tract could best be developed by not using Church Street as a zoning boundary. He said that to develop the tract for single-family detached residences would involve the movement of a large amount of dirt and would result in the destruction of a great number of trees, which were described as specimen trees.

McKenzie Downs, a real estate appraiser, said that a townhouse development was completely in character with the neighborhood and represented the highest and best use of the land. He testified that it would not be completely unreasonable to develop the property as single-family residential, but that if the development proposed by the property owners was not permitted he thought the owners would be deprived of the reasonable utilization of their land.

Douglas R. Fahl, Director of Planning for an engineering and architectural planning firm, testified on behalf of Council and said, with reference to the location of zoning lines, that:

"Now, with respect to the issue of whether or not, frankly, streets versus rear property lines, property lines should be used as the basis for lines of demarcation of dissimilar zoning districts.

"I think that a review of any zoning map, whether it be the Town's or the County of Fairfax, or City of Alexandria, any one of the local jurisdictions, that we could all be familiar with, you'll see ample evidence of where both, in fact, have been used and with considerable degree of success.

"And, to make myself clear, both streets as well as property lines have been used for these lines of districting, if you will, between dissimilar uses."

Fahl also testified that "a very good use" of the Louk Tract would call for single-family residences on Ayrhill, a 50-foot buffer strip of land along Beulah Road and the rest in townhouses, with a maximum total overall density of about 6.+ units per acre.

This would locate the boundary between zoning districts on the Louk Tract between parcels 2 and 3. In *Fairfax County* v. *Snell Corp., supra,* we said:

"The precise location of boundaries between zoning districts is

a function of the zoning process, and in making a zoning judgment the governing body must consider not only the general boundary guidelines of the plan [comprehensive plan] but also location of property lines, physical characteristics of the land, and other factors affecting optimum geographical alignment." 214 Va. at 660, 202 S.E.2d at 894.

The adequacy of public utilities has been a principal factor in the great majority of the zoning cases that have reached this Court. In the case under review the parties stipulated that in the event the Louk Tract was rezoned for townhouse clusters the necessary water, sewer, streets and schools are all available and adequate to serve the development.

■ The location of townhouses on parcel 3 of the Louk Tract will be by no means an isolated development for, as the trial judge points out, on the same night that Council denied appellees' application for a townhouse zoning category, it granted one on the Orlich Tract located only sixty feet from the Louk Tract. The trial judge properly considered this factor and it can be said here, as was said in *Williams, supra:* "No demonstrated real difference distinguishes the various properties and justifies granting preferred status to one property while denying it to another." 216 Va. at 60, 216 S.E.2d at 41. In *Board of Supervisors of Fairfax County* v. *Allman,* 215 Va. 434, 211 S.E.2d 48, *cert. denied,* 423 U.S. 940 (1975), we described such practices as "arbitrary and capricious".

■ The testimony is that appellees can develop parcel 3 to greater advantage and more profitably for townhouses than for single-family detached residences. But it is not disputed that the property could also be developed profitably for single-family detached residences. While a rezoning of the property for townhouses cannot be justified solely upon the ground that such represents its best and most profitable use, that does not mean that economic gain or loss is not a relevant factor to be considered. On the contrary, Code § 15.1-490 expressly provides that a matter to be considered in drawing up a zoning ordinance and in fixing zoning districts is ". . . the conservation of properties and their values and the encouragement of the most appropriate use of the land". Vienna Town Code § 18-39 (1966) contains a similar provision. We have said in numerous cases that in judging the reasonableness of zoning classifications,

consideration should be given to economic factors. In *Fairfax County* v. *Snell Corp., supra,* we further said:

"The statutes recognize that public power over private property rights should be exercised judiciously and equitably. That policy springs not only from public respect for personal rights and individual integrity but also from enlightened public self-interest. The General Assembly has recognized that it is in the public interest that private land not required for public use be put to its optimum use to fulfill societal needs. One purpose of zoning ordinances is 'to encourage economic development activities that provide desirable employment and enlarge the tax base', . . ." 214 Va. at 657-58, 202 S.E.2d at 892.

 We observe that while the views of persons owning neighboring property should be considered, property owners have no *vested right* to continuity of zoning of the general area in which they reside, and the mere purchase of land does not create a right to rely on existing zoning.[2] The zoning of land is an exercise of the police power. A refusal to rezone will be upheld where no compelling need for the rezoning is shown, and it is not clearly demonstrated that the existing zoning classification is no longer reasonable or appropriate. The burden is on one who seeks a rezoning to show the need therefor, and in Virginia we apply the "fairly debatable" rule in the case of denial of a rezoning application. However, a denial of a rezoning request will not be sustained if under all the facts of the particular case, the denial is unreasonable, or is discriminatory, or is without substantial relationship to the public health, safety, morals and general welfare.

The only difference between a single-family detached residence and a townhouse is that townhouses are constructed in clusters and are not detached. In each instance, however, they are single-family residences. The trial judge found from the testimony of the expert witnesses on both sides that townhouses

---

[2] The decision of the Town Council to appeal was made on July 12, 1976, at a public meeting at which a number of the neighborhood property owners appeared and urged Council to appeal.

on the Louk Tract would not violate "the need for open spaces, air and room but in fact because of the peculiar nature of this tract and with its trees were better able to supply those factors than single family detached dwellings placed on pipestem lots or cul-de-sac lots". The court stated: "The town's expert witness could give the court no good reason for why the tract should be zoned single family detached as opposed to townhouses."

It further appears that Beulah Road carries approximately 13,000 vehicles a day and that East Street is also a major entranceway into widely traveled Route 123. The construction of single-family detached dwellings on these streets, with vehicles entering and exiting therefrom, would pose an added traffic hazard.

The general principles which control our decision are well settled. They were referred to and followed by the trial judge. The issues involved are issues of fact. They are whether the property owners successfully challenged the presumptive reasonableness of Council's action in rezoning their property with probative evidence of unreasonableness, and if so, whether Council then, on its behalf, introduced relevant and material evidence of reasonableness sufficient to make the question fairly debatable. The trial judge concluded that the action of Council was arbitrary, capricious, unreasonable and illegal in that it was not related to protection of the health, safety and welfare of the community, and further that Council's action had the effect of depriving the owners of a legitimate and the most appropriate use of their property. The testimony in this case was taken *ore tenus*, and the decision of the court was made after a view of the property. We cannot say from the record before us that its judgment is plainly wrong.

The only parcel of the Louk Tract involved in this appeal contains 6.330 acres and is identified as parcel 3 according to a description thereof by Orlo C. Paciulli and Associates, Ltd., Engineers, Planners and Surveyors, dated June 23, 1976. We affirm the decree of the trial court holding the RS-12.5 zoning classification void as applied to this parcel, and affirm its action in enjoining Council from interfering with the right of appellees to use the 6.330 acre parcel "in such a manner as shall comply in

all respects to an intensity of use of no less than the RTH (Townhouses) zoning district of the Town of Vienna Zoning Code".[3]

*Affirmed.*

---

[3]Affirmation makes a matter of record the acceptance by appellees of Council's rezoning, from category RS-16 to RS-12.5 of parcel 1 containing 2.345 acres, and of parcel 2 containing 3.495 acres, of the Louk Tract. Metes and bounds descriptions of the three parcels of land are included in the record. Paciulli's description of parcel 2, which enlarged the area from 2.922 acres to 3.495 acres, is inclusive of the buffer strip along Beulah Road and includes an additional 10 feet from the northern portion of parcel 3.